# Real Estate Trust .Company *v.* Perry County Railroad Company (No. 1).

*Railroads—Mortgage—Foreclosure—Decree of court—Estoppel—Laches.*

Where purchasers of a railroad in a mortgage foreclosure proceeding have availed themselves of the permissive decree of the court to use bonds as purchase money, and the amount due upon the bonds has been specifically fixed by the court, and the purchasers relying upon the decree have purchased bonds therein designated, and applied them on their bid, received a deed for the property, formed a new corporation, and expended large sums of money, other bondholders who had full notice of the decree and proceedings thereunder, and of the action of the purchasers, have no standing, long after the transaction has been consummated, to petition the court to change the decree so as to correct an alleged inequality amongst the bondholders.

Argued May 22, 1905. Appeal, No. 305, Jan. T., 1904, by Edward R. Sponsler, David Gring and W. H. Sponsler, from decree of C. P. Perry Co., Aug. T., 1903, No. 29, on bill in equity in case of The Real Estate Trust Company of Philadelphia v. The Perry County Railroad Company. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Bill in equity to foreclose a railroad mortgage.    Before AU-
TEN, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*W. H. Sponsler*, with him *James M. Barnett*, for appellants.
—The appellees in this case, with full knowledge of all these
proceedings from August 14, 1903, to January 18, 1904, a
period of five months, never appeared or objected to the decree
of July 20, 1903.   They permitted the appellants to purchase
the bonds on the basis of the amount adjudged to them by
that decree to become the purchasers of this property, the sale
to be confirmed to them, deed to be made conveying the title,
the new railroad company to be formed, possession of the prop-
erty to be taken and a large amount of money expended in the
betterment of the road without an objection, and when all this
was done, they for the first time indicated that they were dis-
satisfied with the decree.   They are now estopped.

*George R. Barnett*, with him *William S. Snyder*, for ap-
pellees.—The decree of July 20, 1903 provides that the pro-
ceeds of sale shall be brought into court for distribution.   This
clearly contemplates a further adjustment, if necessary, of the
equities of all parties, than that made by the decree.   It also
provides that bonds can be used in payment only to the amount
to which they are entitled to be paid in cash out of the proceeds
of sale, which, of course, could be determined only on final dis-
tribution.   Clearly the decree was not executed at the date of
the rehearing, even if appellants are within the rule.

OPINION BY MR. JUSTICE BROWN, October 9, 1905 :
On July 1, 1892, the Perry County Railroad Company is-
sued 200 bonds of $500 each, and to secure their payment exe-
cuted to The Real Estate Trust Company of Philadelphia, as
trustee, a mortgage for $100,000 on all of its property and fran-
chises.   The bonds bore interest at the rate of six per cent.
per annum and were payable twenty-five years from date, the
coupons for the semiannual interest becoming due on the first
days of January and July.   The bonds were all negotiated by

the railroad company, and, at the time the mortgage was foreclosed, were held by fourteen different parties.  On July 1, 1893, the company defaulted in the payment of interest on eighteen of the bonds held by the Pennsylvania Steel Company; on July 1, 1896, it defaulted in payment of the coupons on 143 of the bonds held by The Real Estate Trust Company of Philadelphia, and no interest was ever thereafter paid to either of the said companies, the holders of the bonds up to the time of the foreclosure proceedings.  On the remaining thirty-nine bonds, held by twelve different parties, including the appellees, all interest was paid until July 1, 1903.  On a bill filed by The Real Estate Trust Company as trustee in the mortgage and as a holder of the bonds of the company, a decree of foreclosure was made on July 20, 1903.  By that decree the court below found the exact amount due on each of the two hundred bonds, and who held them ; and in directing the manner in which the net proceeds of the sale of the property should be distributed among these bondholders the decree was that the proceeds should be appropriated, first, to the payment of all interest due on the bonds ; second, to the payment of interest accrued upon the matured and unpaid coupons attached to the bonds, and, third, to the payment of the principal of the bonds in full, if the purchase money should be sufficient for that purpose, and if not, pro rata, so that no preference, priority or distinction should be given to any of the bonds.  And it was further decreed that at the sale the purchase money might be paid " either in cash, or by owners of bonds secured by such mortgage, in such bonds, to such extent as said bonds shall be entitled to payment in cash out of the proceeds of sale."  Subsequently to this decree, and before the day of sale, the appellants purchased one hundred and sixty-three bonds from The Real Estate Trust Company, John Wister's estate and James Boyd, and shortly thereafter the eighteen held by the Pennsylvania Steel Company.  In pursuance of public advertisement the property of the railroad company was sold at public sale in the city of Philadelphia on September 14, 1903, to the appellants for $75,000.  On September 21, 1903, The Real Estate Trust Company made return of its sale to the court below and on that day, after a public proclamation in open court, no exceptions having been filed nor objections made, the sale was

confirmed to the appellants and a deed ordered to be made out to them.    Upon full settlement made by them with The Real Estate Trust Company by paying to it all the cash required by the terms of sale and turning in their bonds at the value which they had for the purpose of being used as purchase money under the decree of the court, a deed was executed and delivered to them and a receipt given in full for the purchase money.    They subsequently formed a new railroad corporation under the act of assembly, taking over all the property and franchises that had been purchased by them, and prior to January 1, 1904, paid out large sums of money in the repair of the rolling stock of the new company and other improvements and betterments.    On January 18, 1904—nearly four months after they had paid for their purchase in exact accordance with the decree of July 20, 1903, and received a deed for what they had purchased—the appellees filed a petition, praying for a rehearing of the bill and alleging that the decree of distribution was inequitable, as it ought to have been ordered pro rata upon all of the bonds, based upon the accumulation of principal and interest in each case only from July 1, 1903, the date of the last payment of interest to the petitioners.    The status in which the other bondholders had been placed by the default of the company was alleged to be due to their indulgence of it, as a penalty for which their coupons that had matured before July 1, 1903, ought not to be paid.    A rehearing was ordered, with the condition that " in so far as the decree has been executed, the parties who have acted on the faith of such decree shall not be prejudiced by such decree being reversed or varied."    The appellants, upon their petition, were allowed to intervene as respondents to the application for the rehearing.    It was conducted before a judge of the eighth judicial district, specially presiding, who, on October 12, 1904, modified the decree of July 20, 1903, by ordering a general pro rata distribution among all of the bondholders, based upon the amount of principal and interest due as one sum in each case, wholly ignoring the rights which had been given the bondholders by the former decree, and upon which the appellants had acted in good faith.

The petition for a rehearing was disposed of by the learned judge, specially presiding, on answer and testimony, but with no regard to the decree of July, 1903.    Indeed, it is not referred

to in his general discussion, and reference is made to it only in the order modifying it. He disposed of the questions raised as if they had never been passed upon by the court before, and though his opinion is designated as one on rehearing, from all that can be gathered from it, except its reference to a prior hearing, it could properly be regarded as the original hearing in the case. After reciting that the appellants had become the purchasers of the property and franchises of the railroad company in September, 1903, and had paid the purchase money in full, as already stated, the court found that, in pursuance of the permission given by the former decree, and in reliance upon it that the purchase money bid for the property and franchises at the sale might be paid for either in cash or bonds secured by the mortgage to such extent as the bonds should be entitled to payment in cash out of the proceeds of the sale, the appellants without any knowledge of the contemplated proceedings by the petitioners for a rehearing, or that they, or any of them, were dissatisfied with the decree of sale, or any part thereof, in good faith had purchased and become the owners of a number of bonds of the value of many thousands of dollars, for the purpose of using them as purchase money in the purchase contemplated by them, and prior to the filing of the petition for the rehearing, and without knowledge that an application for it was contemplated, used the bonds so purchased in their settlement and payment for the property and franchises of the railroad company, as permitted and allowed by the decree of sale; that in their plan and contemplation of the purchase of the said property and franchises of the said railroad company they had considered the condition of the tracks and equipment of the railroad company as dilapidated, worn out, menacing and dangerous, and in view of the necessity of quick and immediate repair and betterment of the property in the interest and safety of the public, had made the railroad safe by the expenditure of a large sum of money. But, in the face of these sweeping findings, the rights of the appellants, as fixed by the decree of July, 1903, and upon which they had acted, were ignored, to their manifest prejudice, by the decree made on the application for the rehearing, for, if it is not disturbed, it will compel them to pay additional purchase money after they have received their deed and paid every dollar called for

by the decree under which they bought.   The question before us is not whether the decree of July 20, 1903, was erroneous in directing that the proceeds of the sale should be applied, first, to the payment of all interest due on the bonds ; second, to the payment of interest accrued upon matured and unpaid coupons, and the balance to the payment of the principal of the bonds, but whether, under the admitted facts, just stated, the second decree of October 12, 1904, should be allowed to stand as an equitable one.

An undenied allegation in the answer to the petition for a rehearing is, that before the decree of July 20, 1903, was finally made The Real Estate Trust Company had notified each one of the appellees of the proceedings to foreclose the mortgage and what decree would be asked for.   Again, after it was made and before it was executed, notice was given them, on August 14, 1903, that a sale of the railroad property would be held in pursuance of it in the city of Philadelphia on September 14, 1903.   No one of them objected to the entry of the decree, to the execution of the order of sale, nor to the confirmation of it by the court after the appellants had complied with all the conditions of the decree.   As soon as the property was sold at the bid of $75,000 the appellees knew, or ought to have known, that by the decree, which they had allowed to become final, they would receive much less than the amounts due them on their bonds ; but, in the period between the date of the sale and its confirmation, when they could have acted, they did nothing.   On the contrary, they allowed it to become absolutely confirmed and permitted the plaintiffs to pay for their purchase in accordance with the decree of sale.   Nearly four months after its confirmation and the payment not only of the purchase money by the appellants, but after the expenditure of thousands of dollars by them in the betterment of the property acquired by the new company, a modification of the decree was asked for, with the immediate effect of making the appellants pay more for the property for the benefit of the appellees.   Assuming that their complaint as to the decree of July 20, 1903, is just, they had been given an opportunity to protest against it before it was made ; again before it was executed, and later on, before the absolute confirmation of the sale, to ask that it be modified.   They did nothing, however,

and with their laches and supineness, not only admitted, but unexplained, it would be against every equitable principle if a chancellor should now hear them to the prejudice of others, who, as found by the judge below in modifying the first decree, had acted in good faith on that decree, with not the slightest intimation that those who now complain of it were dissatisfied with it or contemplated any proceedings to have it modified. The decree of July 20, 1903, was fully executed as to the appellants, the purchasers of the property. There was nothing more for them to do under it, and yet, as now modified on the rehearing granted under the equity rule, that " parties who have acted on the faith of such decree shall not be prejudiced by such decree being reversed or varied," they are so manifestly prejudiced that attention need not again be called to the wrong done them. The holder of a legal claim may be estopped from asserting it; and an equitable claim may in time, through the conduct of its owner, become inequitable as to those against whom he would press it. When the doors of chancery are knocked at in time they will open, that the chancellor may hear, but the knock may be too late, as was the appellees'.

The decree appealed from is reversed, and that of July 20, 1903, is affirmed as fixing the rights of the appellants as purchasers of the property sold, the costs in the proceedings on the rehearing and on this appeal to be paid by the appellees.